UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CLAUDIA M. BRENT                                 CIVIL ACTION NO. 6:14-cv-03200

VERSUS                                           JUDGE DOHERTY

CAROLYN W. COLVIN,                               MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION


## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Claudia M. Brent, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant filed an application for disability insurance benefits ("DIB") on January 31, 2012, alleging disability beginning on January 1, 2011[1] due to carpal tunnel syndrome, high blood pressure,

---

[1]        Rec. Doc. 7-1 at 115.

diabetes, arthritis, and low back pain.[2]  Her application was denied.[3]  The claimant

requested a hearing,[4] which was held on May 13, 2013 before Administrative Law

Judge Carol Lynn Latham.[5]  At the hearing, the claimant requested that the alleged

onset-of-disability date be changed to May 8, 2012.[6]  The ALJ issued a decision on

August 9, 2013,[7] concluding that the claimant was not disabled within the meaning

of the Social Security Act ("the Act") from May 8, 2012 through the date of the

decision.  The claimant asked for review of the decision,[8] but the Appeals Council

concluded on September 8, 2014 that no basis existed for review of the ALJ's

decision.[9]   Therefore, the ALJ's decision became the final decision of the

Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).

The claimant then filed this action seeking review of the Commissioner's decision.

---

[2]     Rec. Doc. 7-1 at 153, 197.

[3]     Rec. Doc. 7-1 at 47, 53.

[4]     Rec. Doc. 7-1 at 62.

[5]     The hearing transcript is found at Rec. Doc. 7-1 at 26-44.

[6]     Rec. Doc. 7-1 at 27.

[7]     Rec. Doc. 7-1 at 12-19.

[8]     Rec. Doc. 7-1 at 8.

[9]     Rec. Doc. 7-1 at 4-6.

## FACTUAL BACKGROUND

The claimant was born on January 20, 1956.[10]  At the time of the ALJ's decision, she was fifty-seven years old.  She has a high school education[11] and past relevant work experience as a caregiver and dishwasher.[12]  She alleges that she has been disabled since May 8, 2012[13] due to carpal tunnel syndrome, high blood pressure, diabetes, arthritis, and low back pain.[14]

The administrative record contains medical records for the claimant covering the time period from March 2008 to January 2013.  Most of the records relate to routine examinations by health care providers at the Teche Action Clinic in Franklin, Louisiana, primarily Dr. Chatsu Gautam.  Only the treatment notes related to the conditions that are allegedly disabling will be reviewed here.

On March 2, 2009,[15] the claimant complained of generalized low back pain, which was responding well to ibuprofen and for which the use of a heating pad was

---

[10]       Rec. Doc. 7-1 at 29, 115.

[11]       Rec. Doc. 7-1 at 154.

[12]       Rec. Doc. 7-1 at 34, 163, 198.

[13]       Rec. Doc. 7-1 at 27.

[14]       Rec. Doc. 7-1 at 153, 197.

[15]       Rec. Doc. 7-1 at 250.

recommended.  She was diagnosed with hypertension and diabetes, and the doctor indicated that the current plan for addressing those conditions was to be continued.

On May 4, 2009[16] and June 4, 2009,[17] her hypertension and diabetes were described as stable.  On July 30, 2009, she complained about pain in her right knee.[18]

On October 2, 2009,[19] the claimant's diabetes was again described as stable. On January 6, 2010,[20] her diabetes and hypertension were both described as stable.

On February 11, 2010,[21] the claimant complained to her physician about numbness and tingling in her left hand.  Her physician diagnosed carpal tunnel syndrome ("CTS"), and EMG studies were recommended.  Her diabetes was noted to be stable.

The claimant returned to her physician on March 31, 2010.[22]  She complained about pain in her neck and left hand.  A reference was made to EMG studies of her upper extremities to determine whether her symptoms were compressive in nature or

---

[16]     Rec. Doc. 7-1 at 259.

[17]     Rec. Doc. 7-1 at 248.

[18]     Rec. Doc. 7-1 at 245, 247.

[19]     Rec. Doc. 7-1 at 243.

[20]     Rec. Doc. 7-1 at 241.

[21]     Rec. Doc. 7-1 at 239.

[22]     Rec. Doc. 7-1 at 274.

the result of neuropathy.   A trial of Gabapentin, which treats nerve pain, was prescribed.  Her diabetes and high blood pressure were described as stable.

Studies performed at Laborde Diagnostics, Inc. on April 6, 2010,[23] showed periarticular osteopenic changes in the claimant's left hand, indicative of an inflammatory type of arthritis.

On April 21, 2010, the claimant was examined by Dr. Kenneth A. Ritter, Jr., an internist, at the request of Disability Determination Services.  Dr. Ritter's report[24] states that the claimant reported carpal tunnel surgery on her right hand in the 1990s and a diagnosis of carpal tunnel syndrome in her left hand since the 1990s.  She told him that her left hand sometimes get numb.  Dr. Ritter found that her grip strength was 5/5 bilaterally but she had a slightly positive bilateral Tinel's sign.[25]  She had a normal gait, no ankle swelling, and negative straight-leg raises bilaterally.  Dr Ritter found that her blood pressure was elevated, he did not know whether her diabetes was controlled, and he stated that "[s]he appears to have a possible carpal tunnel syndrome with her left hand right now.  This has not been treated as of yet."  Dr.

---

[23]     Rec. Doc. 7-1 at 261.

[24]     Rec. Doc. 7-1 at 255-259.

[25]     A positive Tinel's sign at the wrist may be indicative of carpal tunnel syndrome. WebMD,   http://www.webmd.com/pain-management/carpal-tunnel/physician-exam-for-carpal-tunnel-syndrome (last visited Jan. 22, 2016).

Ritter completed a medical assessment of ability to do work-related activities, and found that the claimant's only physical function affected by her impairments was "handling."

The very next day, April 22, 2010,[26] the claimant underwent EMG testing at the Leonard J. Chabert Medical Center in Houma, Louisiana.  The study was abnormal and showed "evidence of bilateral moderate median nerve entrapment neuropathy (carpal tunnel syndrome) at the wrists, left worse than the right, without evidence of ulnar entrapment neuropathy."

On August 3, 2010,[27] the claimant saw her physician with complaints of having fallen and hurt her left hip and wrist.  Her hypertension and diabetes were described as stable.

On November 22, 2010,[28] the claimant returned to her physician and complained of right ankle pain.  The pain was diagnosed as Achilles tendon bursitis, and she was prescribed Celebrex.  She was also prescribed a medication for insomnia. It was noted that her hypertension and diabetes were stable.

---

[26]     Rec. Doc. 7-1 at 264.

[27]     Rec. Doc. 7-1 at 272.

[28]     Rec. Doc. 7-1 at 271.

On February 28, 2011,[29] the claimant again visited her physician.  Among other complaints, she complained of low back pain, and it was noted that she should continue taking Celebrex.  Her hypertension and diabetes were stable.

The claimant returned to her physician on March 19, 2011.[30]  At that time, she complained of back pain and cramping in her feet.

On May 10, 2011,[31] the claimant reported intermittent pain to her physician. More particularly, she complained of low back pain, pain in both big toes, and ankle pain.  The doctor diagnosed her with osteoarthritis and prescribed Tramadol for the pain.  He noted that her diabetes and hypertension were stable.

The claimant returned to the doctor on July 25, 2011.[32]  In addition to diabetes and hypertension, the doctor diagnosed "osteoarthrosis generalized involving multiple sites."  Lab work was done.

The claimant was next seen on July 27, 2011.[33]  The doctor noted that her diabetes was well controlled.  She complained of right ankle pain and low back pain.

---

[29]      Rec. Doc. 7-1 at 270.

[30]      Rec. Doc. 7-1 at 269.

[31]      Rec. Doc. 7-1 at 282.

[32]      Rec. Doc. 7-1 at 284-286.

[33]      Rec. Doc. 7-1 at 287-289.

The claimant again visited her physician on August 24, 2011.[34]  She again complained of right ankle and low back pain.  It was noted that her diabetes was well controlled.  However, she was diagnosed with "polyneuropathy in diabetes."

On September 29, 2011, the claimant again saw her doctor.[35]  She continued to complain of low back pain and ankle pain, but noted some improvement since the previous visit.  Her physician explained that x-rays of the ankle did not show any fracture or subluxation but did show some effusion that he opined was bursitis.  The diagnoses were diabetes, Achilles bursitis or tendinitis, and osteoarthrosis generalized involving multiple sites.

On December 14, 2011, the claimant again saw her doctor for lab work.[36]  On December 22, 2011, she had a routine visit with lab results.[37]  It was noted that her hypertension and diabetes were stable, and she was being prescribed Tramadol for osteoarthritis.

On April 14, 2012, the claimant was examined by Dr. Andrea Murina at the request of Disability Determination Services.  The claimant reported to Dr. Murina

---

[34]     Rec. Doc. 7-1 at 290-292.

[35]     Rec. Doc. 7-1 at 293-295.

[36]     Rec. Doc. 7-1 at 296-298.

[37]     Rec. Doc. 7-1 at 300.

that she had carpal tunnel syndrome in both hands, with surgery to correct the problem in the right hand, and that she was currently experiencing pain and numbness in her left hand.  She reported that this causes her to drop things.  She also reported arthritis in her right ankle, with pain described as 8 out of 10 that is worse with walking and improved with nothing.  She reported low back pain that she associated with an automobile accident.  She reported that she has hypertension and diabetes as well as headaches, which are caused by her medication, associated with blurry vision, and not relieved with analgesics.  The claimant told Dr. Murina that she can feed and dress herself, stand for a total of six hours in an eight hour day, sit for an hour at a time, lift forty pounds, drive for an hour, sweep, mop, vacuum, cook, do dishes, shop, and go up stairs.  Her ambulation was normal.

Dr. Murina found mild swelling in the claimant's right ankle, and the claimant was unable to walk on her toes or perform heel to toe walking.  Dr. Murina found normal range of motion in the low back and right ankle, and straight leg raises were negative.

Her grip strength was 4/5 in her left hand but there was no decreased range of motion, and she was able to button, zip, and pick up a coin.  There was no muscle atrophy in her hand, but sensation to light touch was decreased on the left hand greater than the right and also on the left foot greater than the right.  Although Dr.

-9-

Murina concluded that the claimant's "sensation is intact on the hands," this contradicts her finding that the claimant's sensation to light touch was decreased on the left hand.  Dr. Murina did not find any functional impairments.

The claimant returned to her treating physician on March 5, 2012,[38] at which time she complained of low back and right ankle pain.  The doctor continued to prescribe Tramadol for her pain.  He also treated her for an infection unrelated to her claimed disability.

She was again treated for an infection unrelated to her claimed disability on April 26, 2012.[39]

On June 16, 2012,[40] the claimant was treated for dizziness.  It was also noted that she had right lateral side pain and right ankle pain.

On June 22, 2012, the claimant reported to her doctor that her dizziness had resolved.[41]

The claimant returned to her doctor on July 9, 2012,[42] complaining of low back pain, right ankle pain, and left hand pain with improvement since the last visit.  The

[38]     Rec. Doc. 7-1 at 371-373.

[39]     Rec. Doc. 7-1 at 368-370.

[40]     Rec. Doc. 7-1 at 366-367.

[41]     Rec. Doc. 7-1 at 364-365.

[42]     Rec. Doc. 7-1 at 362-363.

-10-

doctor noted that "[s]he feels the problems does not effect [sic] normal activities." The diagnoses were diabetes, benign essential hypertension, and osteoarthrosis.

On September 20, 2012,[43] the treatment notes indicate that the claimant's left ankle was slightly swollen and she was experiencing pain similar to the pain she had previously had in the right ankle.  The notes indicate that the doctor was attempting to distinguish osteoarthritis from rheumatoid arthritis.  She was also experiencing paresthesia or numbness in her left hand attributable to carpal tunnel syndrome.

On November 6, 2012,[44] the claimant reported to her doctor that her problems had not changed since the last visit but "the problems does [sic] not effect [sic] normal activities."  She complained of pain in her legs suggestive of neurogenic claudication, and an MRI was advised.  Gabapentin was prescribed.  The diagnoses were unspecified essential hypertension, diabetes, and polyneuropathy.

On January 9, 2013, the claimant again visited her physician.[45]  She complained of right ankle pain, low back pain, and other things unrelated to her alleged disability.

At the time of the hearing in May 2013, the claimant was taking the following prescription medications:  Norvasc, Hydrochlorothiazide, and Potassium Chlor for

---

[43]     Rec. Doc. 7-1 at 359-361.

[44]     Rec. Doc. 7-1 at 354-356.

[45]     Rec. Doc. 7-1 at 351-353.

high blood pressure; Metformin for diabetes; Meclizine for dizziness; and Celebrex,

Gabapentin, and Tramadol for pain.[46]

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited

to determining whether substantial evidence supports the decision and whether the

proper legal standards were used in evaluating the evidence.[47]  "Substantial evidence

is more than a scintilla, less than a preponderance, and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."[48]  Substantial

evidence "must do more than create a suspicion of the existence of the fact to be

established, but 'no substantial evidence' will only be found when there is a

'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[49]

---

[46]      Rec. Doc. 7-1 at 232-233.

[47]      *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[48]      *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[49]      *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[50]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[51]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[52]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[53]

---

[50]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[51]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[52]     *Martinez v. Chater*, 64 F.3d at 174.

[53]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

**B.**      **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[54]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[55]   A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[56]

---

[54]      See 42 U.S.C. § 423(a).

[55]      42 U.S.C. § 1382c(a)(3)(A).

[56]      42 U.S.C. § 1382c(a)(3)(B).

-14-

C.      **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled will be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if the claimant can perform any other work at step five.[57]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[58] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

---

[57]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[58]      20 C.F.R. § 404.1520(a)(4).

record.[59]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[60]

The claimant bears the burden of proof on the first four steps.[61]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[62]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[63]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[64]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[65]

---

[59]    20 C.F.R. § 404.1545(a)(1).

[60]    20 C.F.R. § 404.1520(e).

[61]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[62]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[63]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[64]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[65]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

D.      THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since May 9, 2012.[66]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  osteoarthrosis, polyneuropathy, and obesity.[67]   This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[68]  The claimant has not challenged this finding, but this finding will be discussed further, below.

The ALJ found that the claimant has the residual functional capacity to perform the full range of medium work.[69]  The claimant challenges this finding.

---

[66]      Rec. Doc. 7-1 at 14.

[67]      Rec. Doc. 7-1 at 14.

[68]      Rec. Doc. 7-1 at 15.

[69]      Rec. Doc. 7-1 at 16.

At step four, the ALJ found that the claimant is capable of performing her past relevant work.[70]  Consequently, she found that the claimant is not disabled and did not proceed to the fifth step of the analysis.  The claimant challenges this finding.

## E.   THE ALLEGATIONS OF ERROR

The claimant contends that the ALJ erred (1) in concluding that her carpal tunnel syndrome is not severe and (2) in finding that she has the residual functional capacity to do medium work.

## F.   DID THE ALJ ERR IN FAILING TO FIND THE CLAIMANT'S CARPAL TUNNEL SYNDROME SEVERE?

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[71]  The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act.[72]  Therefore, in *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether

---

[70]      Rec. Doc. 7-1 at 18.

[71]      20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

[72]      *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985).

-18-

a claimant's impairment is severe:  an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience."[73]  The claimant argued that the ALJ failed to apply the standard articulated in *Stone* when evaluating whether her carpal tunnel syndrome is severe.  Following a careful reading of the ALJ's decision, this Court finds that the ALJ applied the proper standard in reaching her conclusion regarding the severity of the claimant's carpal tunnel syndrome.

The claimant also argued that substantial evidence does not support the ALJ's finding that her carpal tunnel syndrome is not a severe impairment.  In evaluating the severity of the claimant's carpal tunnel syndrome, the ALJ noted that the claimant gave a history of having been diagnosed with carpal tunnel syndrome in the 1990s, having worked with the condition from its onset until May 8, 2012, and having failed to present "objective evidence of any worsening of her condition."  The ALJ concluded that this "suggests that her condition has not affected her ability to perform basic work activities."  Similarly, the Commissioner argued that the claimant "worked for years despite the presence of a CTS diagnosis."[74]  But the question is not whether

---

[73]     *Stone v. Heckler*, 752 F.2d at 1101.

[74]     Rec. Doc. 9 at 7.

-19-

the carpal tunnel syndrome itself is disabling but whether the carpal tunnel syndrome is severe, i.e., whether it is only a slight abnormality, having such a minimal effect on the claimant that it would not be expected to interfere with her ability to do work. The claimant is not required to show that her condition began only at or after her alleged disability onset date nor is she required to prove that her condition worsened at any time in order to show that it is severe.

The ALJ's analysis also seems to suggest that only objective findings postdating the alleged onset of disability are relevant to a severity finding.  For example, the ALJ gave no weight to Dr. Ritter's findings "because it is too remote in time."  The Commissioner also criticized the claimant for pointing out "a number of findings and complaints in 2010. . . outside the time period addressed by the ALJ's decision."[75]  It is not solely the findings, complaints, and symptoms that exist after the alleged onset date that are relevant to a severity inquiry, particularly since a person may be disabled not due to the impairments resulting from a single condition but by the impairments resulting from a combination of medical conditions.

In this case, the record shows that the claimant complained to her physician of pain, numbness, and tingling in her left hand on more than one occasion.  Objective testing yielded results confirming a carpal tunnel diagnosis but also suggesting

---

[75]        Rec. Doc. 9 at 7.

periarticular osteopenic changes indicative of an inflammatory type of arthritis in the left hand. Dr. Ritter found a slightly positive bilateral Tinel's sign, and he opined that the claimant's ability to "handle" objects was impaired by her carpal tunnel syndrome. The claimant told Dr. Murina and she testified at the hearing that she experiences pain, numbness, and tingling in her left hand and has weakness in her left hand that results in her dropping things. Although Dr. Murina found that the claimant was able to button, zip, and pick up a coin, she also found that her grip strength and touch sensation were decreased in her left hand. Dr. Gautam diagnosed the claimant with polyneuropathy and with osteoarthrosis without specifying whether those ailments affect her left hand. Accordingly, this Court finds that the ALJ's conclusion that the claimant's carpal tunnel syndrome is not severe was not based on substantial evidence in the record. This matter should be remanded so that the severity of that condition can be reevaluated.

**G. DID THE ALJ ERR IN FINDING THAT THE CLAIMANT HAS THE RESIDUAL FUNCTIONAL CAPACITY TO DO MEDIUM WORK?**

The ALJ concluded that the claimant is capable of doing medium work. Medium work involves lifting no more than fifty pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five pounds.[76] A full range of

---

[76]     20 C.F.R. § 404.1567(c).

medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday; medium work also involves use of the arms and hands to grasp, hold, and turn objects.[77]  The ALJ found that the claimant is limited in "her ability to lift, sit, stand, and walk" due to her osteoarthrosis, polyneuropathy, and obesity.[78]  The ALJ "conclude[d] that the claimant's chronic pain and swelling are caused by her osteoarthrosis and polyneuropathy.  These symptoms and impairments limit her ability to lift, sit, stand, and walk.  In addition, the claimant's obesity causes an additional strain on her musculoskeletal system, and further limits her ability to function.  Together, these limitation result in the residual functional capacity outlined above."[79]  It is clear that the ALJ considered only osteoarthrosis, polyneuropathy, and obesity in evaluating the claimant's residual functional capacity.  The ALJ did not figure into her analysis the effect, if any, that carpal tunnel syndrome or any other non-severe impairment has on the claimant's residual functional capacity.  Even if the claimant's carpal tunnel syndrome is not severe, the ALJ erred in failing to consider its impact when evaluating the claimant's residual functional capacity, since all medically determinable conditions – not just those that are severe – must be

---

[77]     SSR 83-10.

[78]     Rec. Doc. 7-1 at 18.

[79]     Rec. Doc.7-1 at 18 (internal citation omitted).

considered when evaluating a person's residual functional capacity.[80]  In this case, the ALJ impermissibly limited the focus of the residual functional capacity evaluation and failed to apply the proper legal standard.   Accordingly, the Commissioner's ruling should be reconsidered.

## H.   Issues Raised by this Court Sua Sponte

At step three of the evaluative process, the ALJ concluded that none of the claimant's claimed impairments – individually or in combination – meet or equal a listing.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[81]   More particularly, "[t]he ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment."[82]

---

[80]     20 C.F.R. § 416.945(a)(2) and (e); *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011).

[81]     *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

[82]     *Darby v. U.S. Com'r, Soc. Sec. Admin.*, No. 6:13-CV-01762, 2015 WL 4605629, at *6 (W.D. La. July 30, 2015); *Savoie v. Colvin*, No. 14–30–JJB–RLB, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015); *Brumley v. Colvin*, No. 7:13-CV-097-O-BL, 2014 WL 7236099, at *6 (N.D. Tex. Dec. 19, 2014).

Although the claimant does not allege that her impairment satisfies a listing, this Court is compelled to raise this issue on its own.[83]

The claimant alleged that she is disabled due to carpal tunnel syndrome, high blood pressure, diabetes, arthritis, and low back pain. At step three of the evaluative process, the ALJ found that the claimant's claimed impairments do not meet a listing. The ALJ stated that, in reaching that conclusion, consideration was given to section 12.04 and 12.09 (Affective and Personality Disorders) of the Listings of Impairments."[84] But there is no allegation that the claimant has an affective disorder or personality disorder and no evidence in the record to support any such allegation had it been made. Therefore, this Court is puzzled by the ALJ's statement. More importantly, the ALJ's failure to compare the claimant's symptoms with the criteria

---

[83]     Although no direct Fifth Circuit authority for this principle was located, courts in other circuits have addressed this issue. The Eighth Circuit has held that a court reviewing a Social Security disability ruling is empowered to raise issues on its own. *Battles v. Shalala*, 36 F.3d 43, 45. n. 2 (8th Cir. 1994). In *Womack v. Astrue*, No. CIV-01-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008), a district court in Oklahoma raised issues *sua sponte*, relying upon a Fifth Circuit ruling holding that a "reviewing court may not. . . abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence," quoting *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir. 1996). Furthermore, the United States Supreme Court has held that a claimant need not exhaust issues in order to preserve his right to judicial review of those issues. *Sims v. Apfel*, 530 U.S. 103, 112 (2000). Therefore, this Court finds that it "cannot . . . ignore obvious and prejudicial errors, even if the litigants did not identify and debate them." *Womack v. Astrue*, 2008 WL 2486524, at *5.

[84]     Rec. Doc. 7-1 at 16.

-24-

of relevant listings resulted in a failure to apply the proper legal standard as well as a failure to support the findings with substantial evidence.

The ALJ also stated, in her ruling, that "[a]t the hearing, she [the claimant] testified that she cannot afford current medical treatment."[85]  Despite a careful review of the hearing transcript, this Court located no such testimony in the record.

Finally, the ruling contains this statement:  "The claimant has the residual functional capacity to perform a full range of medium work activities.  The vocational expert testified that given this assessment, a person of the claimant's profile would be able to perform her past work as generally performed in the national economy."[86]  In fact, however, no such testimony was elicited from the vocational expert at the hearing.  The vocational expert testified that the claimant's past work was medium but offered no testimony whatsoever concerning whether a person such as the claimant could perform her past medium work.

This Court is perplexed as to why these statements were made, when there is no evidence in the record to support them.  More importantly, these statements make it impossible for this Court to conclude that the ALJ's findings at step three and step four of the analysis were based on the proper legal standards or supported by

---

[85]      Rec. Doc. 7-1 at 17.

[86]      Rec. Doc. 701 at 18.

substantial evidence.  Accordingly, the ALJ's conclusions at step three and step four should be reconsidered.

## CONCLUSION AND RECOMMENDATION

This Court finds (1) that the ALJ's conclusion that the claimant's carpal tunnel syndrom is not severe is not supported by substantial evidence, (2) that the ALJ's conclusion that the claimant retains the residual functional capacity to perform the full range of medium work was not reached by applying the proper legal standards, (3) that the ALJ's conclusion that the claimant's impairments do not meet a listing was not reached by applying the proper legal standards and is not supported by substantial evidence, and (4) that the ALJ's conclusion that the claimant can perform her past relevant work was not reached by applying the proper legal standards and is not supported by substantial evidence.  Accordingly,

**IT IS THE RECOMMENDATION** of this Court that the decision of the Commissioner be **REVERSED and REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to (1) determine whether the claimant's carpal tunnel syndrome is a severe impairment, (2) determine whether the claimant has an impairment or a combination of impairments that meets or equals a listing, (3) determine the claimant's residual functional capacity; (4) determine

-26-

whether the claimant can perform her past relevant work and, if not, determine whether the claimant can perform any other work.

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[87]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

---

[87]     See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

-27-

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 1st day of February 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE: ___2/1/2016_____
BY: _____EFA_____
TO: _____RFD_____
cg

-28-